IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00465-MSK-KLM

BALL DYNAMICS INTERNATIONAL, LLC, a Colorado limited liability company,

    Plaintiff,

v.

JAMZ FITNESS, INC., a Florida corporation,

    Defendant.

---

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, DIRECTING SERVICE OF PROCESS, ORDERING RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION, AND SETTING NON-EVIDENTIARY LAW AND MOTION HEARING**

---

THIS MATTER comes before the Court on the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction **(#12).** Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

The Plaintiff, Ball Dynamics International, LLC, asserts claims against the Defendant, Jamz Fitness, Inc. All claims pertain to exercise balls which the Defendant has allegedly marketed to consumers. The Plaintiff alleges that it has several "fitball" trademarks and that the Defendant has improperly used this mark on packaging for its exercise balls. The Plaintiff asserts claims of trademark infringement, unfair competition, false designation of origin, and deceptive trade practices. On these claims, the Plaintiff now moves for issuance of a temporary restraining order and preliminary injunction.

A motion for a temporary restraining order is governed by Fed. R. Civ. P. 65(b), which

provides in relevant part:

> (b) Temporary Restraining Order.
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

A temporary restraining order is an extraordinary remedy, and should only issue where it is necessary to "preserv[e] the status quo and preven[t] irreparable injury just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Int'l. Brotherhood of Teamsters,* 415 U.S. 423, 438-39 (1974). As an *ex parte* remedy, a temporary restraining order is appropriate only in a handful of situations – for example, where "notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing," or where "notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Assn. v. McCord,* 452 F.3d 1126, 1130-31 (9th Cir. 2006).

To obtain preliminary injunctive relief, the moving party must demonstrate: (1) a substantial likelihood that it will eventually prevail on the merits; (2) a showing that it will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *See Autoskill*

*Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir. 1993). If the latter three factors "tip strongly" in the movant's favor, then "the test is modified, and the [movant] may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003) (internal quotes and cite omitted). The Plaintiff asserts that this morning, it sent a copy of its motion to the Defendant by facsimile and first class mail, and to the Defendant's attorney by facsimile, first class mail and email. However, there has been no service of process in this case, and the Court cannot presume that the entity Defendant has received notice of the instant motion simply because the motion was sent to a fax machine or email address. Thus, the Court treats the motion as one without notice to the Defendant.

Here, the Plaintiff has submitted a single affidavit in support of its motion. The affidavit is from Gloria Miller, who is the Plaintiff's marketing manager. According to the affidavit, the Plaintiff holds eight registrations for "fitball," and since 1992 has expended considerable time and money in developing goodwill for these marks. Ms. Miller states that the Plaintiff has used the "fitball" marks for a variety of different products ranging from exercise balls to chairs, massage equipment, videotapes and educational services.

Ms. Miller states that in January 2008, she learned that the Defendant was selling a set of fitness products in Wal-Mart stores in a package which referred to one of the components as a "fit ball". Ms. Miller found that the Defendant was also selling a fitness set on its website for which the packaging referred to the contents as including a "fit ball". Jack Broderick, who is the

3

Plaintiff's Operations Manager, purchased two other fitness sets manufactured by the Defendant at a Wal-Mart store. The packaging on both sets referred to a "fit ball" as a component.

Ms. Miller states that she communicated with the Defendant's president in an attempt to informally resolve the matter. Attached to her affidavit is a letter from the Defendant's president dated February 20, 2008, which stated: "We have never knowingly used any registered trademark on our products or packaging. With that said we are looking into the claim . . . We have no intention of infringing on any trademark and of course would take corrective measures if we have. Please allow us 30 days to review this Matter and discuss any action that may be needed." Also attached to her affidavit is a letter from the Defendant's attorney dated February 27, 2008, in which counsel advised that he believed the term "fit ball" was either a generic or descriptive term which the Defendant could appropriately use, but that the Defendant agreed not to produce any further packaging which includes the words "fit ball". He wrote:

> Our client advises and confirms that the packaging in dispute was part of a one-time promotion with Wal-Mart, and no further inventory exists other than that which is already on store shelves. Wal-Mart owns these products. This store promotion is coming to an end this month, and it is expected that the inventory will exhaust soon thereafter. Our client has no remaining stock of these items and none are in production.

Ms. Miller states in her affidavit that she disbelieves the representations of the Defendant's attorney because the Defendant's products using the words "fit ball" were also offered for sale on the Defendant's website and at Amazon.com during February 2008. She also points to an instance in March 2008 in which Wal-Mart offered the Defendant's product for sale on its website.

According to her affidavit, Ms. Miller thinks that the exercise balls manufactured by the

4

Defendant "do not appear to be as high in quality" as the Plaintiff's products and that sale of the Defendant's balls creates confusion among customers. She states that in her "experience, consumers of rehabilitation and fitness equipment associate 'Fitball' and variations of that name with [the Plaintiff] and its products."

This affidavit does not clearly show that there will be immediate and irreparable injury, loss, or damage to the Plaintiff **before the Defendant can be heard in opposition to the Plaintiff's motion.**[1] For one thing, the Plaintiff identifies no circumstance in which it currently uses any of its marks; Ms. Miller simply states that the marks have been used. If the Plaintiff does not currently use its mark, there can be no infringement of the mark. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918). This is because "the right to a particular mark grows out of its use" and the purpose of a trademark is to protect the goodwill associated with a product in the marketplace. *Id.*; *see also General Healthcare Ltd. v. Qashat,* 364 F.3d 332, 334-35 (1st Cir. 2004); 15 U.S.C.A. § 1127 (defining the term "trademark").

Assuming the Plaintiff currently uses its marks, Ms. Miller's affidavit falls short of clearly showing that the Defendant's marketing of "fit balls" is causing the Plaintiff immediate harm. This is for two reasons. First, the attachments to Ms. Miller's affidavit show that the Defendant used the words "fit ball" on packaging during February 2008, but has since discontinued use of these words. Although Ms. Miller disbelieves the representations of the Defendant's attorney, her disbelief does not establish the fact of current use. The only proffered evidence of current marketing of the Defendant's allegedly infringing product is by Wal-Mart, which is not a party to

---

[1] The Plaintiff waited 15 days after filing its Complaint to move for injunctive relief. The urgency of an order for injunctive relief before the Defendant can be heard is thus not apparent.

5

this action. There is no proffer that the Defendant has any control over Wal-Mart's advertising.

Second, the motion and affidavits are insufficient to establish apparent likelihood of confusion. To determine whether there is a likelihood of confusion, a court considers a number of non-exclusive, interrelated factors: (1) the degree of similarity between the challenged product and the trademark in appearance, pronunciation of the words used, verbal translation of the pictures or designs involved, and/or suggestion; (2) the intent of the defendant in marketing the challenged product; (3) the manner in which the parties use or market their respective goods; (4) the degree of care likely to be exercised by purchasers of the marketed products; (5) evidence of actual confusion on the part of consumers; and (6) the strength or weakness of the marks. *See Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925 (10th Cir. 1986); *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1530 (10th Cir. 1994). No single factor is dispositive. *See Universal Money Centers, Inc.*, 22 F.3d at 1530. Depending upon the facts and circumstances of a given case, some factors may have more relevance than others. *See Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550, 554 (10th Cir. 1998).

At most, Ms. Miller's affidavit shows that the Defendant in the past has used the words "fit ball" on packaging to describe an enclosed exercise ball. This clearly bears similarity to the "fitball" marks. However, her affidavit is silent as to how the Plaintiff currently uses its "fitball" marks, whether the Plaintiff currently markets exercise balls using the marks, whether the Plaintiff and the Defendant market their products in the same places, or whether a consumer has ever actually been confused by the Defendant's use of the words "fit ball" on its packaging. In addition, Ms. Miller's affidavit leaves open the possibility that the Defendant's product is a superior product which might actually aid the Plaintiff's goodwill rather than harm it. Too much

6

is left to speculation for the Court to issue the requested temporary restraining order without notice to the Defendant or an opportunity to respond.

**IT IS THEREFORE ORDERED** that:

(1) The Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction **(#12)** is **DENIED IN PART and DEFERRED IN PART.** The Court denies the Plaintiff's request for issuance of a temporary restraining order. The Court reserves ruling on the Plaintiff's motion for a preliminary injunction.

(2) The Plaintiff shall serve the Complaint, along with a summons, a copy of its Motion for Preliminary Injunction **(#12)**, and this Order, on the Defendant within 10 days of this Order.

(3) Within 10 days of service of the summons, Complaint, motion and this Order, the Defendant shall file a response to the Motion for Preliminary Injunction.

(4) A hearing is set on the law and motion calendar of Judge Marcia S. Krieger on **April 2, 2008 at 11:00 a.m.** in the United States District Court for the District of Colorado, Courtroom A901, 9th Floor, Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. Counsel shall *bring their calendars*. The parties shall be prepared to address: (a) the Plaintiff's Motion for Accelerated Discovery **(#9)**; (b) whether hearing on the Motion for Preliminary Injunction should be consolidated with a trial on the merits; and (c) the setting of an evidentiary hearing on the Motion for Preliminary Injunction.

Counsel may appear at this hearing by telephone. To appear telephonically, counsel and any *pro se* parties shall contact the Courtroom Deputy at **303-335-2185** no later than two court days before the hearing to make arrangements.

Dated this 21st day of March, 2008

                              **BY THE COURT:**

                              */s/ Marcia S. Krieger*

                              Marcia S. Krieger
                              United States District Judge